IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

THOMAS L. GARCIA-MONES, *et. al.*,

**Plaintiffs,**

v.

GROUPO HIMA SAN PABLO, INC., *et. al.*,

**Defendants.**

CIVIL NO. 11-2006 (FAB)

OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is defendant Centro Medico del Turabo, Inc. d/b/a HIMA SAN PABLO Fajardo's motion to dismiss plaintiffs' Thomas L. Garcia-Mones ("Garcia-Mones"), his wife Anna G. Mones, and their conjugal partnership (collectively, "plaintiffs") claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After reviewing plaintiffs' complaint and relevant briefs, the Court **DENIES** the defendant's motion to dismiss.

I.   **Background**

A.   **Factual and Procedural History**

Plaintiffs filed their complaint on October 11, 2011, seeking damages for the defendant's alleged negligent care of Garcia-Mones while he was a patient at the HIMA SAN PABLO Fajardo

---

[1]   Justin Rowinsky, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Opinion and Order.

hospital in Fajardo, Puerto Rico ("HIMA"). (Docket No. 1 at ¶¶ 17-21.) Plaintiffs claim that they are domiciled in the state of Florida. Id. at ¶ 5. Plaintiffs own and operate a charter business that "provides services to Saint Thomas and Puerto Rico," and they also own a vacation home in Vieques, Puerto Rico. Id. As a result of that home and their charter business, they "spend a lot of time in Puerto Rico." Id. During one of their visits to Puerto Rico, Garcia-Mones was having some "problems with his left knee," and was referred to Dr. Delgado by word-of-mouth recommendations. Id. at ¶ 6. Dr. Delgado operates at HIMA and he performed knee surgery on Garcia-Mones on January 11, 2011. Id. at ¶¶ 6-7.

After the surgery, Garcia-Mones was placed alone in a hospital room that had no other patients assigned to it. Id. at ¶ 8. At some point during the night after his surgery, Garcia-Mones needed to use the bathroom and attempted to page a nurse by pressing the call button. Id. at ¶ 9. Garcia-Mones alleges that only "one registered nurse" had been "attending his floor" during his time as a patient there. Id. at ¶ 15. After trying to page a nurse several times and "crying for help" without success, Garcia-Mones attempted to get out of the hospital bed and into the bathroom by himself. Id. at ¶¶ 9-11. As he began moving he "got caught between the rails of the bed and started to feel a lot of pain; after a while, he passed out." Id. at ¶ 11. Several hours

later, in the morning, Garcia-Mones woke up on the floor near the hospital room's bathroom, "with most of the bed sheets over him." Id. at ¶ 12.  Dr. Delgado was the first person to discover Garcia-Mones when he entered the room for a routine check-up.  Id.  Once Garcia-Mones was back in the bed, Dr. Delgado went to the nurses station and requested pain medication for Garcia-Mones.  Id. at ¶ 13.  After keeping Garcia-Mones in the hospital a few more days for observation, Dr. Delgado signed the discharge order for Garcia-Mones on January 15, 2011.  Id. at ¶¶ 14, 16.

On May 20, 2011, an MRI was performed on Garcia-Mones' left knee.  Id. at ¶ 19.  That MRI indicated he had a "Macerated Medial Meniscus and Small Joint Effusion" - injuries that allegedly "are the result of the accident" that Garcia-Mones had suffered in the hospital five months earlier.  Id. at ¶ 19.  Garcia-Mones seeks damages based on the "permanent impairment" of his knee, the alleged "disparagement and contempt" the nurses exhibited to him during his stay in the hospital, and the "failure and negligence" of the defendant to provide him with a "minimal standard of care" while he was a patient at HIMA.  Id. at ¶¶ 17, 23-25.  Plaintiffs seek a total of $375,000.00 in damages.  Id. at ¶ 26.

**B.   The Defendant's Motion to Dismiss**

Defendant filed a motion to dismiss on December 21, 2011 pursuant to Rule 12(b)(1) for a lack of subject matter jurisdiction

and a Rule 12(b)(6) motion based on the Forum Selection Clause contained in the agreement that Garcia-Mones had signed prior to Dr. Delgado's surgery in the hospital.  (Docket No. 6 at p. 3.) Plaintiffs opposed defendant's motion on January 9, 2012, (Docket No. 10), and defendant replied on January 27, 2012, (Docket No. 20).  The Court will address each of defendant's arguments in turn.

## II.  Discussion of Subject Matter Jurisdiction

### A.    Legal Standard for Rule 12(b)(1) Motion to Dismiss

A defendant may file a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction at any time because federal courts are "courts of limited jurisdiction." Padilla-Manqual v. Pavia Hosp., 640 F.Supp.2d 128, 133 (D.P.R. 2009) (citing Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979). When reviewing motions to dismiss, a court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (internal citation omitted).  When subject matter jurisdiction is challenged, the party asserting jurisdiction has the burden of proving it by a preponderance of the evidence.  See, e.g., Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) (internal citation omitted).  The Court "may consider whatever evidence has been submitted, such as the

depositions." <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st
Cir. 1996).

###   B.   Legal Standard for Establishing Diversity Jurisdiction

Subject matter jurisdiction based on diversity of
citizenship requires that the amount in controversy exceed $75,000,
and that all plaintiffs must be diverse from all defendants.   28
U.S.C. § 1332(a) (2012); <u>see also</u> <u>Exxon Mobil Corp. v. Allapattah</u>
<u>Services, Inc.</u>, 545 U.S. 546, 553 (2005) ("[T]he presence in the
action of a single plaintiff from the same State as a single
defendant deprives the district court of original diversity
jurisdiction over the entire action.").   Courts evaluate whether
there is diversity between all plaintiffs and all defendants by
looking to the parties' domicile, which is "the place where he has
his true, fixed home and principal establishment." <u>Padilla-Manqual</u>
<u>v. Pavia Hosp.</u>, 516 F.3d 29, 31 (1st Cir. 2008) (quoting <u>Rodriguez-</u>
<u>Diaz v. Sierra-Martinez</u>, 853 F.2d 1027, 1029 (1st Cir. 1988)).
There is a "presumption of continuing domicile," and a party must
prove that his or her domicile has changed through objective
evidence that establishes:   (1) that he or she is physically
present in the new state, and (2) that he or she has an intent to
remain there.   <u>See</u> <u>Padilla-Manqual</u>, 516 F.3d at 31.   If the
evidence does not prove a change of domicile by a preponderance of
the evidence, the former domicile remains the current one.   <u>See,</u>

e.g., Hawes, 598 F.2d at 701 (holding that "until a new [domicile]
is acquired, the established one continues."). Courts determine
where the parties were domiciled as of the date the complaint was
filed. See Padilla-Mangual, 516 F.3d at 31.

Defendant's motion to dismiss argues that plaintiffs were
not domiciled in Florida at the time they filed the complaint, and
that therefore, subject matter jurisdiction is lacking. (Docket
No. 6 at pp. 8-10.) Defendant highlights that on HIMA's medical
forms Garcia-Mones listed a U.S. Virgin Islands phone number and
the plaintiffs' Vieques home address. Id. at p. 9. Defendant also
highlights the fact that Garcia-Mones chose to have the surgery
performed in Puerto Rico rather than in Florida. Id. Plaintiffs
respond by first acknowledging each of the defendant's highlighted
facts as true. (Docket No. 10 at p. 3.) Plaintiffs provide
additional facts, however, as evidence that they were domiciled in
Florida when they filed the complaint. (Docket No. 10 at p. 3.)
These facts include that the plaintiffs have lived in Florida for
the past 47 years, have driver's licenses from Florida, own real
property in Florida, and are both registered to vote in Florida.
(Docket No. 10 at p. 3.)

Plaintiffs have the burden of producing enough evidence
to establish that they were domiciled in Florida on October 11,
2011, when they filed the complaint. See, e.g., Lundquist v.

Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991).

Domicile has two requirements:  (1) physical presence in the state,

and (2) the intent to remain there.  See Padilla-Manqual, 516 F.3d

at 31.  The Court will briefly address both criteria, and will rely

on plaintiffs' brief in opposition to the defendant's motion to

dismiss (Docket No. 10), and Garcia-Mones' sworn testimony

regarding his domicile in Florida.  (Docket No. 12-1.)[2]

### i.    Physical Presence in Florida

Garcia-Mones has lived in Florida "for the last 47

years."  (Docket No. 12-1 at ¶ 2.)  This is not a case, therefore,

where the Court must determine if plaintiffs have recently *changed*

domicile from one state to another.   Instead, the Court must

determine whether living in Florida for the last 47 years is

sufficient to satisfy the "physical presence" requirement of

determining domicile.

Even though plaintiffs were not physically in

Florida on the date the lawsuit was filed, they have lived part of

every year for the previous 47 years in a Florida home that they

---

[2] The Court also notes that defendant's final reply brief filed on
January 27, 2012 (Docket No. 20) does not challenge plaintiffs'
domicile but instead focuses solely on the forum selection clause
and the motion to dismiss pursuant to Rule 12(b)(6).   Because
defendant had previously filed a motion to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1), however,
(Docket No. 6 at p. 3) the Court will address the merits of whether
it has jurisdiction over the subject matter of the case.

own.  Id. at ¶ 4.  The fact that the plaintiffs also spend part of every year in Puerto Rico and St. Thomas does not affect the physical presence requirement for domicile.  Because a citizen is domiciled in only one state for the purpose of establishing diversity, the presence of real property in other states and time spent at those properties does not mean the party lacks a domicile, or that it rotates based on where the plaintiff is present at the time of the lawsuit.  See Valentin, 254 F.3d at 366 (holding that a party's domicile is where "he has his true, fixed home and principal establishment, and to which, *whenever he is absent, he has the intention of returning*.") (internal quotation omitted) (emphasis added).  Plaintiffs always return to their home in Florida, and consider that home their "fixed home and principal establishment."  Id.  That is sufficient to establish that plaintiffs were domiciled in Florida for the purpose of establishing diversity when the complaint was filed.  The Court now examines whether the plaintiffs had the requisite intent to remain in Florida.

### ii.  Intent to Remain in Florida

Several factors are used to determine whether a party has demonstrated the requisite intent to remain in a state that is required for determining domicile.  The factors include (1) where the party's driver's license is issued; (2) where the

party is registered to vote; (3) where the party has club and church memberships; and (4) whether that party is employed in the state.  See, e.g., Bank One, Texas, N.A., 964 F.2d at 50 (internal citation omitted).  Most of these factors weigh in favor of finding that plaintiffs' were domiciled in Florida when the complaint was filed.

Garcia-Mones has a Florida driver's license, and has been registered to vote in Florida since 1966.  (Docket No. 12-1 at ¶ 3.)  He has "never voted in Puerto Rico," nor is he "registered to do so."  Id.; see also Padilla-Mangual, 516 F.3d at 32 (holding that where a person is registered to vote is "a weighty factor in determining domicile.").  Garcia-Mones spends "most of [his] time" in Florida, and his "first and only language is English."  Id. at ¶¶ 6, 8.  Moreover, the presence of both real and personal property in Florida not only establishes the physical presence in the state (as discussed above), but is also evidence of an intent to remain in Florida.  See, e.g., Bank One, 964 F.2d at 50.  Combined, these uncontested facts offered by the plaintiffs are sufficient to establish the requisite intent to remain in Florida.

Plaintiffs satisfy both requirements necessary to establish that they are domiciled in Florida.  Therefore, plaintiffs have successfully established diversity jurisdiction and

the defendant's motion to dismiss for lack of subject matter
jurisdiction is **DENIED**.

## III. Discussion of the Forum Selection Clause's Enforceability

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

In the First Circuit, "a motion to dismiss based upon a
forum-selection clause is treated as one alleging the failure to
state a claim for which relief can be granted under
Fed.R.Civ.P. 12(b)(6)." <u>Silva v. Encylopedia Britannica Inc.</u>, 239
F.3d 385, 387 (1st Cir. 2001).  In assessing the plaintiff's
complaint, the Court is bound to treat all "properly pled factual
allegations" as true and draw all reasonable inferences in the
plaintiffs' favor. <u>See, e.g.</u>, <u>Ocasio-Hernandez v. Fortuño-Burset</u>,
640 F.3d 1, 12 (1st Cir. 2011).  The Court may, however, disregard
statements that "offer legal conclusions couched as fact," because
the plaintiff must do more than "parrot the elements of the cause
of action." <u>Id.</u>  The pled factual material must be sufficient "to
raise a right to relief above the speculative level," and permit
the Court to "draw the reasonable inference that the defendant is
liable for the misconduct alleged." <u>Id.</u> (quoting <u>Ashcroft v.
Iqbal</u>, 556 U.S. 662, 678 (2009)).  A complaint that contains a
plausible basis for relief "may proceed even if it appears that a
recovery is very remote and unlikely." <u>Id.</u> at 556 (internal
citation omitted).

Civil No. 11-2006 (FAB)                                          11

       The Court must base its determination solely on the material submitted as part of the complaint and expressly incorporated within it.  See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  There are exceptions for documents, however, if the parties do not dispute their authenticity, and for documents that are "sufficiently referred to in the complaint."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).

    **B.**    **Forum Selection Clause contained in the Agreement Signed by Garcia-Mones**

       Defendant's motion to dismiss argues that plaintiffs' case should be dismissed without prejudice pursuant to Rule 12(b)(6) because of the forum selection clause contained in the agreement that Garcia-Mones signed prior to his surgery.  (Docket No. 6 at p. 10.)  The clause stated that if a patient seeks any "physical, emotional or economic damages" against the hospital, that patient "expressly agree[s] to submit any claim . . . solely to the jurisdiction of the Court of First Instance of the Commonwealth of Puerto Rico."  Id.

Plaintiffs respond by arguing that Garcia-Mones "did not understand the documents provided for his signature,"[3] and that, regardless, this Court has already recognized that Puerto Rico does not enforce forum selection clauses against medical patients. (Docket No. 10 at pp. 3-5) (citing Vazquez v. Hosp. Episcopal Cristo, No. 10-2216, 2011 WL 6748951 (D.P.R. Dec. 22, 2011)). Defendant responds by contending that Vazquez was incorrectly decided.  (Docket No. 20 at p. 7.)  First, defendant argues that forum selection clauses are "resolved under federal law and policy," and Puerto Rico statutes are accordingly "immaterial." Id. Second, defendant argues that Puerto Rico "has not enacted any 'statute' prohibiting forum selection clauses in the health care context," only a regulation.  Id.  The Court will first provide background on forum selection clauses in general, and then address the specific forum selection clause in this case and the Commonwealth's relevant regulation.

In cases in which subject matter jurisdiction is based on diversity of citizenship, district courts are bound to apply the substantive law of the forum in which they sit.  See, e.g., Boston

---

[3] Garcia-Mones allegedly indicated to the woman at the hospital's admission office "that he did not understand Spanish," but he was told that none of the documents was available in English. (Docket No. 10 at p. 4.)  Therefore, Garcia-Mones allegedly "proceeded to sign each of the documents without really knowing and understanding what he was signing."  Id.

Gas Co. v. Century Indem. Co., 529 F.3d 8, 21 (1st Cir. 2008).

District courts apply federal laws or rules, however, to matters

that are "arguably procedural." Hanna v. Plumer, 380 U.S. 460, 476

(1965) (Black, J., concurring).  Forum selection clauses have long

been enforced by the federal courts "as a matter of federal common

law."  Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993).

Morever, the Supreme Court has held that forum selection clauses

are "prima facie valid" unless "enforcement would contravene a

strong public policy of the forum in which suit is brought, whether

declared by statute *or by judicial decision*." M/S Bremen v. Zapata

Off-Shore Comp., 407 U.S. 1, 10, 15 (1972) (emphasis added).

        As a general matter, district courts in the First Circuit

have followed federal common law and enforced forum selection

clauses because the forum state's substantive law has usually

"appear[ed] generally to accord with federal common law." Lambert,

983 F.2d at 1116, 1117; see also Huffington v. T.C. Group, LLC, 637

F.3d 18, 23 (1st Cir. 2011) (holding that "both Delaware and

Massachusetts follow the federal common-law standard" for enforcing

contractual forum selection clauses).  The Lambert court

acknowledged, however, that the question of "whether forum

selection clauses are to be treated as substantive or procedural

for *Erie* purposes" is indeed "daunting."   Lambert, 983 F.2d

at 1116.

The District of Puerto Rico has also generally followed federal common law and enforced forum selection clauses, because there is usually "no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses." Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 386 n. 1 (1st Cir. 2001). Moreover, as recently as 2010, the First Circuit Court of Appeals noted that the Commonwealth's treatment of forum selection clauses "follow[ed] the federal standard announced by the Supreme Court in M/S Bremen," which stated that forum selection clauses are *prima facie* valid unless they contravene the forum's public policy. Rafael Rodriguez Barril, Inc. v. Conbraco Inst., Inc., 619 F.3d 90, 92 (1st Cir. 2010) (holding that a forum selection clause in a commercial contract between a Puerto Rico company and a North Carolina company was enforceable and did not contravene Puerto Rico public policy or law).

Although as a *general* matter Puerto Rico still enforces forum selection clauses, in 2008 the Office of the Patient's Advocate of Puerto Rico (OPA) enacted a regulation banning the inclusion of forum selection clauses in documents that are used to secure the informed consent of medical patients. Office of the Patient's Advocate of P.R., Regulations to Implement the Provisions of Public Law 194 of August 25, 2000, Regulation No. 7617,

Article 13, Section 8(C)(2) (November 21, 2008).[4]   The First Circuit Court of Appeals has addressed this regulation only once, in a case with the identical defendant and identical forum selection clause as the one in this case.  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 23 (1st Cir. 2009).  The Rivera court acknowledged Regulation No. 7504,[5] but held that the regulation was not relevant because it did not apply retroactively.  Id.  Without considering that regulation, however, the court reaffirmed the lack of "conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses," and held that the clause was valid and enforceable.  Id. at 16.  Because the language of that clause required the forum to be in the

---

[4] The Regulation states in part:

> Providers are strictly prohibited from requesting the following from patients or making the following part of the informed consent to be signed by patients: (2) Legal clauses unrelated to the medical or health care or field pertaining to the patient's condition or the treatment to be provided to the patient, such as, but not limited to: forum selection clauses.

[5] Regulation No. 7617 replaced Regulation No. 7504 that the OPA passed on May 12, 2008.  The Rivera court addressed Regulation No. 7504 (because No. 7617 had not yet been passed), but the relevant language on forum selection clauses at issue in this case is identical in both regulations.  The OPA issued both regulations pursuant to its delegated authority contained in enabling acts: Law No. 194 of August 25, 2000; and Law No. 11 of April 11, 2001.

Commonwealth courts (a "mandatory" clause), the court upheld the enforcement of the clause and dismissed the claim.  Id. at 18, 23.

Even though the Rivera court did not apply the regulation to the case because it did not apply retroactively, the court noted that the regulation was "persuasive evidence of Puerto Rico's public policy *today*."  Rivera, 575 F.3d at 23.  In 2011, the Puerto Rico Supreme Court noted that including "forum selection clauses in the informed consent documents presented to patients . . . has been validly banned in our legal system."  Centro Medico del Turabo, Inc. v. Departamento de Salud, 181 D.P.R. 72, 77 n. 1 (P.R. 2011) (citing Regulation No. 7617) (translation ours).[6]  Most recently, this Court held that a forum selection clause "presented to patients as part of the informed consent process" was "illegal and unenforceable," citing Regulation No. 7617 and the Puerto Rico

---

[6] The Court reminds both parties that they are responsible for providing "the district court with and put into the record an English translation" of documents that are essential to the resolution of the case. Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008).  The defendant failed to include a certified English translation of the forum selection clause that Garcia-Mones signed.  In addition, both parties failed to include a certified English translation of the dispositive Centro Medico Puerto Rico Supreme Court case.  Although "[a]llowing the outcome of a case to turn on a non-English language document would be at odds with the premise of a unified and integrated federal courts system," the Court proceeded without the English translations because those documents were necessary to resolve the Commonwealth's recent legal change on the validity of forum selection clauses signed by medical patients.  Id.

Supreme Court decision in Centro Medico. Vazquez v. Hosp. Episcopal Cristo Redentor, Inc., No. 10-2216, 2011 WL 6748951 at *1 (D.P.R. Dec. 22, 2011). The Vazquez court distinguished Rivera because retroactivity was no longer an issue, because Regulation No. 7617 had taken effect prior to the events of that case. Id. In light of this background, the Court now addresses the forum selection clause in this case by evaluating the clause both as a procedural issue and as substantive law.

    **i.   Procedural**

        Even though federal common law typically enforces forum selection clauses, the Supreme Court has clearly stated that the clauses "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought." M/S Bremen, 407 U.S. at 15. Both statutes and judicial decisions are evidence of a forum's public policy. Id. Regulation No. 7617, although not a statute, is nonetheless "a generally applicable statement that has the legal effect of binding an agency or other parties." Rhode Island Hosp. v. Leavitt, 548 F.3d 29, 40 (1st Cir. 2008) (upholding a federal agency's interpretation of a regulation and its binding effect on the plaintiffs). Moreover, both the First Circuit Court of Appeals and the Puerto Rico Supreme Court have acknowledged that Puerto Rico public policy prohibits the enforcement of forum selection clauses signed by medical

patients. See Rivera, 575 F.3d at 23 (stating that Regulation 7617 is "persuasive evidence of Puerto Rico's public policy"); Centro Medico, 181 D.P.R. at 77 n. 1 (holding that the "inclusion of forum selection clauses in the informed consent documents presented to patients . . . has been validly banned in [the Commonwealth's] legal system.") (translation ours).   Therefore, following the exception set forth in M/S Bremen, the Court holds that the forum selection clause is unenforceable as a matter of federal common law.

> ## ii.  Substantive

Federal district courts that have subject matter jurisdiction over a case based on the diversity of the parties are bound to apply the forum state's substantive law.   In doing so, they must "ascertain, as best [they] can, the rule that the state's highest tribunal would likely follow," and should be "unadventurous" while doing so.   Porter v. Nutter, 913 F.2d 37, 40-41 (1st Cir. 1990).   In this case, no adventure is required.   The Puerto Rico Supreme Court has clearly stated that Regulation No. 7617 "validly ban[s]" enforcing forum selection clauses against medical patients.   Centro Medico, 181 D.P.R. at 77 n. 1.   Because the Court is bound by the Commonwealth's laws governing contracts, the answer is clear.   Avery v. Hughes, 661 F.3d 690, 693-94 (1st Cir. 2011).   Applying Commonwealth substantive law, the forum

Civil No. 11-2006 (FAB)                                                    19

selection clause is unenforceable and, therefore, the Court has jurisdiction over this case.  The defendant's motion to dismiss must be **DENIED.**

**V.   Conclusion**

For the reasons discussed above, the Court has subject matter jurisdiction over the case and the forum selection clause contained in the agreement signed by Garcia-Mones is unenforceable.  The defendant's motion to dismiss pursuant to both Rule 12(b)(1) and Rule 12(b)(6) is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 13, 2012.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE